## Schneider *v.* Mill Creek Borough, Appellant.

*Negligence—Borough—Bridge—Traction engine—Case for jury.*

1. In an action against a borough to recover damages for injuries caused to plaintiff's traction engine by the breaking down of a bridge across which it was being propelled, the case is for the jury where the evidence is conflicting as to the condition of the bridge, and as to the warning given plaintiff.

2. Where there are facts to be determined by the jury from conflicting evidence, and inferences to be drawn from the facts so found, the case cannot be withdrawn from the jury.

Argued Oct. 31, 1912. Appeal, No. 221, Oct. T., 1912, by defendant, from judgment of C. P. Huntingdon Co., Feb. T., 1910, No. 10, on verdict for plaintiff in case of James M. Schneider v. Mill Creek Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to a traction engine. Before Woods, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $170.07. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*James S. Woods,* with him *Thos. F. Bailey,* for appellant, cited: Forks Twp. v. King, 84 Pa. 230; Erie v. Magill, 101 Pa. 616; Haven v. Bridge Co., 151 Pa. 620; Boyle v. Mahanoy City Boro., 187 Pa. 1; Joyce v. Baltimore & Ohio R. R. Co., 230 Pa. 1; Clulow v. McClelland, 151 Pa. 583; Humphreys v. Armstrong County, 56 Pa. 204.

*W. M. Henderson,* for appellee, cited: McCormick v. Washington Twp., 112 Pa. 185; Clulow v. McClelland, 151 Pa. 583.

Opinion by Rice, P. J., February 27, 1913:

This action was brought to recover damages for injuries caused to the plaintiff's traction engine by the breaking down of a bridge across which it was being propelled. It is undisputed that the bridge formed part of the highway, and that it was the duty of the borough to maintain it in reasonably safe condition. Nor is any question raised as to the sufficiency of the evidence to sustain a finding that this duty was neglected. The sole question raised by the appellant is, whether the court should have given binding direction for the defendant on the ground of plaintiff's contributory negligence. In view of the evidence that for many years prior to the accident traction engines of equal weight with that of the plaintiff, and even greater weight had been commonly used on the highways, in that immediate vicinity, for hauling threshing machines, it could not be declared, as matter of law, that, even though that was the fact,

nevertheless the plaintiff was subjecting the highway and the bridge to an extraordinary or unlawful use: Coulter v. Pine Twp., 164 Pa. 543; Smith v. Muncy Creek Twp., 206 Pa. 7; Whitmire v. Muncy Creek Twp., 17 Pa. Superior Ct. 399.  But it is argued that, though such use of a borough or township bridge is not, under all circumstances, a negligent act, it was so under the circumstances of this case.  It becomes necessary, therefore, to review the testimony at some length, although we shall not attempt to recite all of it.  It appears that the engine was first used on August 4, 1909.  Two witnesses called by the defendant testified that, on that day, at the railroad station, when Daniel Keiper, the plaintiff's engineer, was on his way to the plaintiff's residence to bring the machine to Mill Creek, John E. Fultz, the street commissioner of the borough, "told him he could not cross that bridge at Mill Creek, it wasn't safe," and that Keiper replied, "That was Mr. Schneider's orders, and he was going to bring it down." It is to be observed, with regard to this conversation, that it does not appear that Keiper was then in actual physical control of the engine, or that the conversation was communicated to the plaintiff.  It does appear, however, that later in the day the engine and machine were brought to the bridge, and that, before crossing, a conversation took place between Fultz and the plaintiff.  The former testified that he told the plaintiff he did not believe the bridge would stand the weight of the engine, and "if he would wait we would get it fixed."  The plaintiff and his brother testified that what transpired was, that Mr. Fultz, putting his hand on the burr of a bridge bolt, said that he would not guarantee the bolts, that they might slip the thread, and, being asked by the plaintiff how the timbers were in the bridge, he answered that they were all right.  It was for the jury to reconcile this conflict of testimony, if they could, and, if they could not, then to decide which version was correct.  As will be seen later, the determination of this question of fact has an important bearing on the decision of the main question.  Immediately after this conversa-

tion the engine and machine were taken separately across
the bridge in safety.  But on May 9, five days later, when
they were brought back from the place where they had
been in use, the accident occurred.  It appears that,
before crossing, the machine was detached from the
engine, and planks were laid lengthwise to distribute
the weight and to prevent the wheels from cutting into
the floor of the bridge.  According to the testimony of
the plaintiff's brother, who was then in charge, the right
hind wheel of the engine slipped off the plank, and, after
the engine had gone a couple of feet, the side of the bridge
gave way, throwing it into the stream.  It is claimed by
defendant's counsel that it was the sudden jar, caused by
the wheel going off the end of a short plank, that broke
down the bridge, and that the engineer was negligent in
permitting it to go off the plank.  Possibly the jury could
have drawn that inference from the testimony of Mr. Et-
nier, a witness for the defendant, but there was also testi-
mony that there was no jolt, that the slipping of the wheel
from the plank was due to the plank's shifting its position.
No presumption of negligence arises from the fact that
planks were laid on the floor of the bridge for the purpose
above stated.  It was peculiarly within the province of
the jury to determine what was the immediate cause of
the giving way of the bridge, whether the laying of the
planks was a proper precaution, whether they were laid
with due care, and whether the engine was propelled
negligently or with due care.  So far as this branch of
the case is concerned, we are unable to point to any fact
or combination of facts indisputably established that
would have warranted the court in taking these questions
from them and declaring that the plaintiff was guilty
of contributory negligence in any of the particulars above
referred to.  Nor can we agree with appellant's counsel
that the court ought to have instructed the jury peremp-
torily that, in view of what occurred on May 4, the plaintiff
was guilty of negligence in taking his engine on the bridge
at all on May 9.  First, the bridge was not closed, but was

left open for use by the public, and, according to the testimony of the plaintiff and his brother, who was in charge on May 4, he was not distinctly notified not to use it. We do not say that this was conclusive against the defendant's contention, but it is a highly important fact, as will be seen by a perusal of Humphreys v. Armstrong County, 56 Pa. 204; Sheridan v. Palmyra, 180 Pa. 439, and Monongahela Bridge Co. v. Bevard, 8 Sadler, 479. Secondly, the evidence would support a finding that the plaintiff was not warned that the timbers were in unsafe condition, but was told by the street commissioner that they were all right. True, he admits, in effect, that he was warned that the bolts might not stand the strain, but it is important to notice that, according to the plaintiff's evidence, the bridge did not fall because the burrs of the bolts slipped their threads, but because the timbers were rotten and broke. Third, while one of the defendant's witnesses testified to a statement alleged to have been made by one of the Schneiders that the bridge sagged at some point about six inches when the engine was taken over on May 4, yet, according to the direct testimony adduced by the plaintiff, the engine passed over "without trouble." The foregoing recital is sufficient to show that there were facts to be determined by the jury from conflicting evidence, and inferences to be drawn from the facts so found. It may be conceded, for present purposes, that the plaintiff knew, or ought to have known, from what he had been told as to the bolts, that the bridge was, on that account, a place of danger. But it does not follow, as a necessary conclusion of law, or as an unavoidable inference of fact, that he was guilty of negligence on May 9 in attempting to take his engine across it. The question is, whether the apparent condition of the bridge on that date, or the plaintiff's knowledge of its condition derived from what occurred and was said on May 4, was such as ought to have led a man of ordinary prudence to foresee that it could not be used safely by the exercise of reasonable care. That this was the correct

test to be applied, and that it is only in clear cases where such a question can be withdrawn from the jury by the court, is shown by numerous analogous cases, amongst which may be mentioned Sheridan v. Palmyra, 180 Pa. 439 (a bridge case); Stokes v. Ralpho Twp., 187 Pa. 333; Mellor v. Bridgeport Boro., 191 Pa. 562; Steck v. Allegheny, 213 Pa. 573; Chambers v. Braddock Boro., 34 Pa. Superior Ct. 407. The general rule as to the province of the court and jury in determining the question of contributory negligence is well settled and has frequently been stated in this way: "The question of contributory negligence cannot be treated as one of law unless the facts and the inferences to be drawn from them are free from doubt. If there is doubt as to either, the case is for the jury:" Kuntz v. N. Y., etc., R. R. Co., 206 Pa. 162; Keile v. Kahn, 30 Pa. Superior Ct. 416. "It has frequently been stated that it is only in cases where the evidence is direct, certain, presenting no question of credibility and leaving no sufficient ground for inconsistent inferences of fact that the court may instruct the jury as to its legal effect:" Wertz v. Girardville Boro., 30 Pa. Superior Ct. 260. This case is not of that character, and it was properly submitted to the jury. The manner of its submission is not and cannot be complained of by the defendant inasmuch as all of its points were unqualifiedly affirmed.

The judgment is affirmed.

MORRISON, J., dissents.